UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE MORALES (9),<br><br>Defendant. | Case No.: 19-cr-03255-BTM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**<br><br>**[ECF NO. 284]** |
|---|---|

Before the Court is Defendant Jose Morales' motion to suppress statements. (ECF No. 284.) The Court held an evidentiary hearing on November 17, 2020 and heard oral argument on November 23, 2020. For the reasons discussed below, the Defendant's motion is granted in part and denied in part.

## I. BACKGROUND[1]

On the morning of September 10, 2019, between 5:30 and 6:00 a.m.,

---

[1] Unless otherwise indicated, the following summary of facts is derived from the evidence presented at the November 17, 2020 hearing.

Defendant was arrested by the FBI in connection with an investigation of the Imperial Valley Ministries ("IVM"). In effectuating Defendant's arrest, the FBI was assisted by Defendant's state parole officer Michael Reyes, who called and asked Defendant to meet him in the driveway of the sober living facility in which Defendant resided, under the pretext that he would provide Defendant with his monthly check and bus pass. When Defendant went outside to the driveway, FBI agents placed Defendant under arrest and the parole officer instructed Defendant to do what the FBI agents told him to do.

Defendant was then transported to the FBI field office in San Diego, where shortly before 7:00 a.m., he was interviewed by FBI Special Agents Brandon Chan and Zenaida Castro. Neither agent was armed during the interview. For the duration of the interview, Defendant was handcuffed by one wrist to a bar that was mounted to the wall of the interview room. Defendant did not have breakfast prior to his arrest and was not offered any food or water during the approximately one-and-a-half-hour interview.

Before the interview began, Agent Chan orally advised Defendant of his *Miranda* rights. Agent Chan then explained to Defendant that he was being arrested in connection with Imperial Valley Ministries, and the conversation proceeded as follows:

> **Agent Chan**: Alright, well. Or before, before we go on, ah…so it sounds like you're willing to talk to us? Am I
> **Defendant**: Oh, yeah, yeah,
> **Agent Chan**: Am I right? Okay. So,
> **Defendant**: [unintelligible], You guys gotta let me know, you guys gotta let me know a little bit more though, I mean.
> **Agent Chan**: Sure.
> **Defendant**: I want to know a little bit more before I--
> **Agent Chan**: Right. Well I've already told you—
> **Defendant**: So, that's that's all you got for me?
> **Agent Chan**: Yeah. It's, it's in connection
> **Defendant**: Lets go then.
> **Agent Chan**: to, IVM

> **Defendant**: Then let's go then. I'm ready to go.
> **Agent Chan**: Okay.
> **Defendant**: I mean, that's all you got for me, then I ain't got nothing to say, right?
> **Agent Chan**: And, once we start ah… talking to you, you have the right to stop at any time. As I've already explain[ed] to you. Alright?

(ECF No. 284-1, Exh. C, 3:20–4:11.) Agent Chan then provided Defendant with a FD-395 advisal-of-rights form, which Defendant signed. The advisal-of-rights form that Defendant signed stated: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." (Government Exhibit 1.) Agent Chan then proceeded to question Defendant about Imperial Valley Ministries.

According to Agent Chan's observations of Defendant during the interview, Defendant appeared to be fluent in English, appeared to understand the questions being asked, did not appear to be sick or ill, did not appear to be under the influence of narcotics or alcohol, did not appear to have any significant intellectual deficiencies or cognitive impairments, and appeared to be confident and self-assured. Agents Chan and Castro did not threaten Defendant or raise their voices during the interview.

## III. DISCUSSION

Defendant moves to suppress any and all statements he made during his interview with Agents Chan and Castro on September 10, 2019, arguing that the agents failed to cease questioning when he invoked his Fifth Amendment right to remain silent and that his statements were involuntary. The Government opposes suppression, arguing that Defendant's statements were voluntary and that he did not unambiguously invoke his right to remain silent.

When an individual is subject to custodial interrogation, "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona*, 384 U.S.

436, 473–74 (1966). "At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." *Id.* at 474. "The Supreme Court has subsequently clarified that the suspect's right to cut off police questioning is triggered only when the suspect unambiguously and unequivocally invokes it, by invoking . . . the right to remain silent." *Garcia v. Long*, 808 F.3d 771, 777 (9th Cir. 2015) (citing *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010)). "[A]n unambiguous and unequivocal *Miranda* invocation cuts off questioning—even questioning intended to clarify that the accused is invoking his *Miranda* rights." *Id.* at 778. This is a "bright-line prohibition," and "postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Smith v. Illinois*, 469 U.S. 91, 98–100 (1984). Further, "[a] suspect need not speak with the discrimination of an Oxford don. Rather, he need only articulate his desire to remain silent . . . sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be such a request." *Garcia*, 808 F.3d at 777 (internal citation and quotation omitted). "[N]either the Supreme Court nor [the Ninth Circuit] has required that a suspect seeking to invoke his right to silence provide any statement more explicit or more technically-worded than 'I have nothing to say.'" *Arnold v. Runnels*, 421 F.3d 859, 865 (9th Cir. 2005).

     Here, Defendant unambiguously invoked his Fifth Amendment right to remain silent on his involvement with Imperial Valley Ministries, and the agents were required to cease further questioning on that subject. Agent Chan asked Defendant whether he was willing to talk to them. Defendant responded by asking for more information. When Agent Chan explained that his arrest was in

connection with Imperial Valley Ministries, Defendant responded "I mean, that's all you got for me, then I ain't got nothing to say, right?" Agent Chan then proceeded to interview Defendant about his involvement with Imperial Valley Ministries. Defendant's statement that "I ain't got nothing to say" is squarely in line with materially similar or functionally equivalent statements that the Ninth Circuit, as well as other circuits, have found to be proper invocations of the right to remain silent. *See United States v. Garcia-Cruz*, 978 F.2d 537, 542 (9th Cir. 1992) (finding the statements "I'm not gonna get all off into that" and "that's all I can say" as "a proper invocation of" the right to silence); *United States v. Bushyhead*, 270 F.3d 905, 911-12 (9th Cir. 2001) (finding defendant's statement "I have nothing to say, I'm going to get the death penalty anyway" to be "the invocation of silence itself"); *Jones v. Harrington*, 829 F.3d 1128, 1139 (9th Cir. 2016) (finding the statement "I don't want to talk no more" was "unambiguous on its face"); *Flores v. Muniz*, 809 F. App'x 463, 464 (9th Cir. 2020) (finding that the statement "'I'm done talking,' cannot reasonably be interpreted as anything except a facially unambiguous invocation of the right to remain silent"); *United States v. Proano*, 715 F. App'x 655, 656 (9th Cir. 2018) ("[d]efendant unambiguously and unequivocally invoked his right to remain silent when he told the interrogating officers 'I have nothing to say'"); *Bates v. Clark*, 365 F. App'x 840, 841 (9th Cir. 2010) (finding that the statement "'I'm not saying anything right now,' cannot reasonably be interpreted as anything but a facially unambiguous invocation of the right to remain silent"); *United States v. Abdallah*, 911 F.3d 201, 214 (4th Cir. 2018) ("Defendant's statement that he 'wasn't going to say anything at all' was a clear invocation of the right to remain silent"); *Tice v. Johnson*, 647 F.3d 87, 107 (4th Cir. 2011) (defendant's statement "I have decided not to say any more" was "clear and unequivocal" and meant "he no longer wished to answer questions . . . and, therefore, that the officer should stop asking them"). After Agent Chan explained that Defendant was being arrested in connection

with Imperial Valley Ministries, when Defendant responded, "I mean, that's all you got for me, then I aint got nothing to say," it was clear that Defendant meant that he had nothing to say about Imperial Valley Ministries.  Further, the Court does not find anything in the conversation leading up to Defendant's statement sufficient to render his otherwise facially unambiguous statement ambiguous. Therefore, Defendant's Fifth Amendment right to remain silent was violated when agents continued to question him.

While the Court concludes that Defendant's September 10, 2019 statements to Agents Chan and Castro were the product of a *Miranda* violation, the Court finds that Defendant's statements were voluntary in nature.  Before proceeding with the interview, Agent Chan orally advised Defendant of his *Miranda* rights and also provided Defendant with a FD-395 advisal-of-rights form, which Defendant signed.  The form stated: "I have read this statement of my rights and I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present."  This advisal of *Miranda* rights weighs in favor of a finding of voluntariness.  In addition, according to Agent Chan's observations of Defendant during the interview, Defendant appeared to be fluent in English, appeared to understand the questions being asked, did not appear to be sick or ill, did not appear to be under the influence of narcotics or alcohol, did not appear to have any significant intellectual deficiencies or cognitive impairments, and appeared to be confident and self-assured.  Further, Agents Chan and Castro did not threaten Defendant or raise their voices during the interview.

Defendant argues that he felt compelled to answer the agents' questions because, during Defendant's arrest in the driveway, his parole officer instructed him to do what the FBI agents told him to do, and he feared a parole violation. The Court is not persuaded that Defendant's parole officer's instruction during the arrest to do what the FBI agents told Defendant to do equated to an order

that Defendant answer any or all of the FBI agents' questions.  Considering the totality of the circumstances, Defendant's will was not overborne when he made his statements.

Having found that Defendant's September 10, 2019 statements were voluntary despite the *Miranda* violation, the Court holds that the statements cannot be used at trial in the Government's case-in-chief, but can be used for impeachment.  *See Harris v. New York*, 401 U.S. 222, 224 (1971) ("It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards."); *Oregon v. Elstad*, 470 U.S. 298, 307 (1985) ("Despite the fact that patently voluntary statements taken in violation of *Miranda* must be excluded from the prosecution's case, the presumption of coercion does not bar their use for impeachment purposes on cross-examination.").

Defendant makes an additional argument that his statements should be suppressed because "he was not advised of his right to counsel under the Sixth Amendment and made no waiver of that right."  However, after being informed that he was being arrested in connection with a case against Imperial Valley Ministries, Defendant was advised of his *Miranda* rights, and signed a FD-395 advisal-of-rights form which stated: "I have read this statement of my rights and I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present."  Defendant's Sixth Amendment right to counsel was not violated.  *See Patterson v. Illinois*, 487 U.S. 285, 296 (1988) ("As a general matter . . . an accused who is admonished with the warnings prescribed by this Court in *Miranda* . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one."); *Miller v. Baldwin*, 723 F. App'x 408, 413 (9th Cir. 2018) (in the context of a waiver of the

Sixth Amendment right, "[i]f a defendant has been indicted, we have disavowed a categorical rule requiring he be notified of the indictment").

### III. CONCLUSION

Based upon the foregoing, the Defendant's motion to suppress his September 10, 2019 statements is **GRANTED IN PART** and **DENIED IN PART**. Because Defendant's September 10, 2019 statements were obtained through continued questioning after he had unambiguously invoked his right to silence, they may not be introduced at trial during the Government's case-in-chief. Because such statements were otherwise voluntary, however, they may be used by the Government where appropriate to impeach the Defendant.

IT IS SO ORDERED.

Dated: December 7, 2020

_____
Honorable Barry Ted Moskowitz
United States District Judge