**KATIE HURRELBRINK**
California State Bar No. 325632
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Katie_Hurrelbrink@fd.org

Attorneys for Jose Morales

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>    v.<br><br>Jose Morales,<br><br>            Defendant. | Case No.:   19cr3255<br><br>Hon. Barry T. Moskowtiz<br>Date: October 18, 2021<br>Time: 2:00 p.m.<br><br>Supplemental Briefing in Support of Mr. Morales's Motion to Dismiss the Indictment under the Religious Freedom and Restoration Act. |

On April 26, 2021, Mr. Morales moved to dismiss the indictment under the Religious Freedom and Restoration Act ("RFRA"). Dkt. 390. Oral argument is set for October 18, 2021. In advance of argument, Mr. Morales draws this Court's attention to supplemental authority in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), decided in June 2021 and therefore not previously briefed. Mr. Morales intends to discuss this authority at oral argument and is happy to provide further briefing on request.

*Fulton* held that the government violated a private, Catholic foster care agency's First Amendment rights by requiring the agency to certify same-sex couples as foster parents. *Id*. at 1882. The Supreme Court's analysis applies here.

First, the "religious exercise" in that case was a Catholic group's "mission" of "serv[ing] the needy children of Philadelphia" by operating a foster care agency (abbreviated "CSS"). *Id*. at 1874, 1876. *Fulton* therefore refutes the government's

suggestions that religious exercise must be "central to" the religion, compulsory for all members of the religion, or must consist of "religious doctrine." Resp. 10–13; *see also* 42 U.S.C. § 2000cc-5 ("The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."). Religiously motivated acts of service, like IVM's drug treatment programs, count as religious exercise.

Second, *Fulton* held that the government's proffered "compelling interests"—e.g., maximizing the number of foster parents and ensuring equal treatment of same-sex couples—were formulated much too generally. 141 S.Ct. at 1881. "The question . . . is not whether the City has a compelling interest in enforcing its non-discrimination policies generally, but whether it has such an interest in denying an exception to CSS." *Id*. Here, the government may not rely on its general interest in enforcing the statutes in question but must justify its specific interest in preventing IVM from engaging in ministry practices.

Third, *Fulton* held that because the City allowed a government official to grant individual exemptions to program requirements, the law was not generally applicable. *Id*. at 1882. The exemptions also refuted the City's compelling interest argument by "undermin[ing] the City's contention that its non-discrimination policies can brook no departures." *Id*. Here, the government permits other SNAP beneficiaries to pool resources and not work while in group settings or rehabilitation programs. *See, e.g.*, Reply 16–17; 7 C.F.R. § 273.7(b)(1)(vi) (exempting "[a] regular participant in a drug addiction . . . treatment and rehabilitation program" from work requirements); 7 U.S.C. § 2012(k)(5) (defining "food" to include meals prepared and served by drug addiction programs); 7 U.S.C. § 2012(m) (classifying "groups of individuals," and specifically "[n]arcotics addicts" who "live under the supervision of a private nonprofit institution," as "households" for purposes of SNAP). And though it is normal for drug rehabilitation facilities to engage in practices like those described in the indictment,

the government does not prosecute those facilities and even refers supervisees to them. Reply 7–11.

Fourth, *Fulton* rejected the government's claim that a law does not impose a "substantial burden" merely by requiring an agency to certify that same-sex couples meet statutory criteria. 141 S. Ct. at 1876. The Court reasoned simply, "CSS believes that certification is tantamount to endorsement. And religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Id*. If certification is a substantial burden, then undoubtedly prosecution is.

Respectfully submitted,

Dated:  October 12, 2021

*s/ Katie Hurrelbrink*
Federal Defenders of San Diego, Inc.
Attorneys for Jose Morales
Email:  Katie_Hurrelbrink@fd.org